AO 91 (Rev. 11/11)  Criminal Complaint

| | | |
|---|---|---|
| AUSA: | Karen L. Reynolds | Telephone: (313) 226-9672 |
| Special Agent: | Shanika Sanders | Telephone: (313) 226-2573 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| United States of America | | |
| v. | | Case No.  Case: 2:21−mj−30559 |
| Shuqueni Renee Franklin | | Assigned To : Unassigned |
| | | Filed 11/24/2021 |
| | | SEALED MATTER (LH) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 1, 2020 through September 1, 2020__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1341 | Mail Fraud |
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |
| 18 U.S.C. § 1956(a)(1)(B)(i) | Money Laundering |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Shanika R Sanders*
*Complainant's signature*

Special Agent Shanika Sanders
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: November 24, 2021

*Judge's signature*

City and state: Detroit, MI      Kimberly G. Altman, U.S. Magistrate Judge
*Printed name and title*

Save   Print

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHUQUENI RENEE FRANKLIN,

    Defendant.

Case No.

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF**
**A CRIMINAL COMPLAINT**

I, Shanika Sanders, being first duly sworn, hereby depose and state as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint charging the above individual with mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), aggravated identity theft (18 U.S.C. § 1028A), and money laundering (18 U.S.C. § 1956(a)(1)(B)(i)).

2. I am a Special Agent (SA) of the U.S. Department of Labor, Office of Inspector General (DOL/OIG), and have been so employed since January 2016. Prior to this assignment, I was employed as an investigator in Industry Operations for the Bureau of Alcohol, Tobacco, Firearms and Explosives for three years. I am currently assigned to the Detroit Field Office of DOL/OIG.

3.      During my years at the Department of Labor, I have conducted numerous investigations into criminal violations of both Title 29 and Title 18 of the United States Code. During this time, I have been either the lead agent or supporting agent on several investigations involving criminal schemes targeting the State of Michigan's (SOM) Unemployment Insurance Agency (UIA) through the filing of false or fictitious unemployment insurance (UI) claims. Based on my direct personal experience with these cases, I have become familiar with the methods that criminals use to attack and exploit the UI systems, as well as tools and methods criminals often utilize to facilitate that fraud.

4.      This affidavit is being submitted for the limited purpose of showing that there is sufficient probable cause for the requested criminal complaint and arrest warrants and does not set forth all my knowledge about this matter.  The information stated below is based upon my personal observations as well as information received from State of Michigan Fraud Investigators, special agents of the Internal Revenue Service (IRS), and other reliable sources.

5.      This investigation concerns false and fraudulent unemployment insurance (UI) claims filed in relation to the COVID-19 pandemic.  As described below, SHUQUENI RENEE FRANKLIN has obtained money or property by means of false and fraudulent pretenses and representations, facilitated using interstate wire communications.

## II.  BACKGROUND ON PANDEMIC UNEMPLOYMENT ASSISTANCE

6. State unemployment systems and benefits are joint state and federal enterprises largely financed by taxes on private employers located in that state. When state unemployment benefits are exhausted, they may be supplemented by federal funds appropriated by the U.S. DOL. At the time of this application, the federal government is providing significant supplemental benefits to the states because of the COVID-19 pandemic.

7. The Families First Coronavirus Response Act (FFCRA) became law on March 18, 2020 and provided additional flexibility for state unemployment insurance agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was later signed into law on March 27, 2020, and the American Rescue Plan Act of 2021 (ARPA) was later signed and further expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic, including for workers who are not ordinarily eligible for unemployment benefits. One such program established to accomplish that end was the Federal Pandemic Unemployment Compensation (FPUC) program.

8. The FPUC allowed eligible individuals who were collecting certain UI benefits, including regular unemployment compensation, to receive an additional $600.00 in federal benefits per week for weeks of unemployment

3

ending on or before July 31, 2020. Another such program, the Pandemic Emergency Unemployment Compensation (PEUC) program, allowed those who exhausted benefits under regular unemployment compensation or other programs to receive up to 13 weeks of additional federally funded benefits up to December 26, 2020.

9.  On December 27, 2020, the President signed legislation that extended these programs for an additional 12 weeks. Those receiving unemployment benefits were entitled to an additional $300.00 for each week of unemployment until April 4, 2021. At the time of this application, the legislation and programs detailed above have extended many of these federally backed benefits until early September 2021. That is all to say, the recent federal legislation and programs detailed above allowed for a significant outlay of federal funds to flow to and through the states to offset the recent and historic need of the American workforce for unemployment benefits because of the COVID-19 pandemic, including the American workforce in the SOM and in the Eastern District of Michigan (EDMI). Collectively and colloquially, the funds flowing from these programs have come to be known as Pandemic Unemployment Assistance (PUA).

10. In order to receive UI benefits, individuals are required to file claims with the UI program in the state in which the individual worked. Depending upon the state, claims may be filed in person, by telephone, or online.

11. In the State of Michigan, the UI system is administered by the UIA, which is part of the SOM's Department of Labor and Economic Opportunity (DLEO). Normally (in the absence of fraud), an unemployed worker initiates a UI claim. This can be accomplished by submitting a claim in person, over the telephone, or via the Internet. Currently, most UI claims are filed online through the UIA's website. To be eligible for UI benefits, the worker must demonstrate a certain level of earnings in several quarters immediately preceding the application. The amount of unemployment benefits that a UI claimant might be eligible for depends on a variety of factors, including but not limited to the length of his or her previous employment and the amount of wages he or she earned.

12. The origin of the payment to the SOM-UIA's bank account from the SOM-UIA's ASAP account originates from Michigan, where SOM-UIA is located. Once the SOM-UIA makes this request, the Treasury Web Applications Infrastructure (commonly referred to as the TWAI) routes the funds through one of two Operations Centers, either the Dallas Operations Center (DOC) located in Dallas, Texas, or the East Rutherford Operations Center (EROC) located in East Rutherford, New Jersey.

The payment path always includes routing through one of these two centers for processing. If it is an ACH payment, the payment generally passes through the ACH Clearinghouse, also known as The Clearing House, in Atlanta, Georgia. Alternatively, if the ASAP payment is being made as a Fedwire payment, the payment path typically passes through the FRB New York's Clearinghouse, located at the EROC in New Jersey. Whether the SOM-UIA's bank account is located in the same state, or elsewhere, the funds would have necessarily flowed through the facilities described above prior to arriving in the SOM-UIA's bank account.

13. After the UIA accepts an unemployment claim, it transfers the initial unemployment benefits into an account associated with a bank, a prepaid debit card, or a UI debit card. Multiple states, including California and Michigan, provide UI benefits to a claimant using a debit card, issued by Bank of America (BOA), which is mailed to the claimant through the USPS. The unemployment benefits are loaded onto the debit card electronically, and additional benefits are loaded onto the card electronically every two weeks.

14. The investigation has revealed that after UI funds were processed, subjects known and unknown used Bank of America debit cards to make cash withdrawals from automated teller machines (ATMs) throughout metro Detroit.

### III. DEFENDANT

- SHUQUENI RENEE FRANKLIN is a 30-year-old female, believed to reside in Sterling Heights, Michigan.

15. There is probable cause to believe that the above defendant willfully committed both mail and wire fraud; that is, to obtain money or property through the submission of false and fraudulent UI claims, the processing and payment of which involved both the use of the mails and interstate wire transmissions. Additionally, there is probable cause to believe that the above defendant willfully committed money laundering; that is, to knowingly conceal or disguise the nature, location, source, ownership, or control of the proceeds of the mail and wire fraud. Further, the above defendant made use of the personal identifying information (PII) of multiple individuals during and in relation to the scheme to defraud and obtain money or property.

### IV. PROBABLE CAUSE

16. The investigation has revealed that the named defendant is responsible for the submission of over 200 fraudulent UI claims to at least five states. As a result of the conspiracy, approximate loss is $1,228,640, with a possible loss of $6,446,131.

17. Multiple UI claims have been linked together based upon the Internet Protocol (IP) address (es) from which the claims were submitted and/or accessed.[1] Claims were also linked based upon other claim attributes such as the physical address, email address, and bank account numbers, which led to the discovery of additional IP addresses and subsequent claims.

18. The author discovered connections to IP address 162.197.49.142 (IP.162), which itself had been used to submit more than 15 fraudulent UI claims in California, and accessed 10 of the fraudulent Michigan UI claims in this UI fraud scheme. AT&T records identified SHUQUENI RENEE FRANKLIN as the assignee of IP.162, beginning in July 2020. Comcast records further indicated phone number ending in 6707, which the author has verified belongs to SHUQUENI RENEE FRANKLIN, through law enforcement database searches, and bank records. Also, SHUQUENI RENEE FRANKLIN included the phone number on her personal Michigan UI claim. Many of the fraudulent UI claims reviewed during this investigation were accessed by IP.162.

---

[1] An Internet Protocol ("IP") address is a unique code given to a computer when connected to the Internet through an Internet Service Provider ("ISP"). An ISP assigns the IP address to an end user. The IP address, along with the date and time, usually allows the ISP to identify the location of the end user and/or subscriber. An IP address looks like a series of four numbers, each in the range 0–255, separated by periods (e.g., 162.197.49.142). This notation is an example of the legacy IP version 4 ("IPv4") addressing.

19. Another IP in this UI fraud scheme, IP.69, was linked to the residential address used by SHUQUENI RENEE FRANKLIN on her personal Michigan UI claim. Specifically, over 150 UI claims made to the State of Michigan, and an additional nine UI claims made to the State of Maryland, were submitted and accessed from IP.69. WOW records identified A.S. as the assignee of IP.69, beginning in March 2020. WOW records further indicated 2002 Enterprise Drive, Troy, MI 48083, an address that is linked to 24 fraudulent UI claims in this UI fraud scheme, as discussed below.

20. As described above, the investigation revealed that 10 UI claims made to the State of Michigan, and 15 made to the State of California were submitted and/or accessed from IP.162. AT&T records indicated IP.162 was assigned to FRANKLIN from July 20, 2020, through September 10, 2020.

21. Michigan unemployment claim records identified three UI benefit claims submitted between April 21, 2020, and May 10, 2020, in the name of FRANKLIN. Two of the claims used SSNs not belonging to FRANKLIN.

22. Further review of the UI data, detailed one UI claim submitted in FRANKLIN's name, for the state of Arizona. The claim filed used a social security number (SSN) not belonging to FRANKLIN. The fraudulent UI claim was filed by IP. 69.

9

23.  The two fraudulent Michigan UI claims made in the name of FRANKLIN, utilizing different SSNs, were submitted totaling $29,832.00. On May 12, 2020, one of the fraudulent claims was approved and subsequently deposited into a J.P. Morgan Chase account ending -8789.  The account ending -8789 was created using the name SHUQUENI FRANKLIN on May 6, 2016. The second fraudulent Michigan UI claim was deposited onto a Bank of America UI debit card, on May 14, 2020.

24.  In this UI fraud scheme, seven of the fraudulent Maryland UI claims, filed by IP. 69, were deposited onto Bank of America UI debit cards.  The cards were primarily used throughout metro Detroit at Bank of America ATMs.

25.  In February 2021 the author received images from Bank of America depicting FRANKLIN making withdrawals from Bank of America ATMs, utilizing four different UI debit cards that were not in her name.  One withdrawal on July, 3, 2020, FRANKLIN is seen making a withdrawal from a Bank of America ATM in Troy, Michigan using a Maryland UI debit card, in the name of "A.C."  The Maryland UI debit card was loaded with fraudulently obtained UI funds.  That debit card received $12,790 in fraudulent UI benefits.

26.  On August 25, 2021, the author contacted "A.C". "A.C." confirmed she did not file a UI claim in Maryland.  "A.C." denied ever living or working in the State of Michigan, or Maryland.  "A.C." confirmed the SSN and DOB used to

file the fraudulent UI claim did belong to her, but she was unfamiliar with the physical address used in the filing of the claim. "A.C." also denied providing her information to anyone for the purpose of filing the fraudulent Maryland UI claim.

27. In this UI fraud scheme, over 65 of the fraudulent California UI claims filed were deposited onto Bank of America UI debit cards. The cards were primarily used throughout metro Detroit at Bank of America ATMs.

28. In August 2021 the author received images from Bank of America depicting FRANKLIN making withdrawals from Bank of America ATMs, utilizing ten different UI debit cards that were not in her name. One withdrawal on September, 22, 2020, FRANKLIN is seen making a withdrawal from a Bank of America ATM in Rochester, Michigan using a California UI debit card, in the name of "C.R." The California UI debit card was loaded with fraudulently obtained UI funds. That debit card received $22,800 in fraudulent UI benefits.

29. On August 25, 2021, the author contacted "C.R". "C.R." confirmed she did not file a UI claim in Michigan or California. "C.R." denied ever living or working in the State of Michigan, or California. "C.R." confirmed the SSN and DOB used to file the fraudulent UI claim did belong to her, but she was unfamiliar with the physical address used in the filing of the claim. "C.R." also advised she was aware a UI claim being filed in her name, in Pennsylvania, but

not Michigan or California and denied providing her information to anyone for the purpose of filing either of the UI claims.

30. FRANKLIN's withdrawal of fraudulent UI funds via ATMs at banks and liquor stores, located in the Eastern District of Michigan, constitutes federal money laundering violations under 18 U.S.C. 1956 (a). It is through this conversion of the proceeds of the fraudulently obtained UI funds to cash that FRANKLIN concealed and disguised the true source of the fraudulent funds.

## V. CONCLUSION

31. Based on the forgoing, there is probable cause to believe that SHUQUENI RENEE FRANKLIN has committed multiple federal crimes, to include mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), aggravated identity theft (18 U.S.C. § 1028A), and money laundering (18 U.S.C. § 1956(a)(1)(B)(i)). These violations stem from an ongoing scheme to defraud federal and state unemployment insurance programs and to obtain unemployment benefits by means of false and fraudulent pretenses and representations. This scheme involved both the wire transmission of signs and signals in interstate commerce and the use of the mails, also the PII of numerous individuals was used during and in relation to the scheme, while attempting to conceal the fraudulently obtained funds via cash withdrawals at local ATMs located in both banks and liquor stores in an effort to launder the funds.

Respectfully submitted,

_Shanika R Sanders_
Special Agent Shanika Sanders
Department of Labor-
Office of Inspector General

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_Kimberly G. Altman_
HONORABLE KIMBERLY G. ALTMAN
United States Magistrate Judge

Dated:  November 24, 2021